IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN NG-A-MANN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 4:14cv488 |
| VS. | § | |
| | § | Jury Trial Demanded |
| SEARS, ROEBUCK & CO., | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff John Ng-A-Mann files this Complaint against Defendant Sears, Roebuck & Co.. and would show the following:

### Parties

1. Plaintiff John Ng-A-Mann is an individual residing in Harris County, Texas.

2. Defendant Sears, Roebuck & Co. is a New York corporation with its principal place of business in Illinois. Defendant may be served with process through its registered agent, CT Corp System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

### Jurisdiction and Venue

3. This Court has federal question jurisdiction over the case because it arises under the Age Discrimination in Employment Act (ADEA).

4. Venue is proper because all of the relevant events occurred in this District.

### Claim for Relief

5. Sears operates a chain of department stores. Sears is an employer within the meaning of the ADEA and Chapter 21 of the Texas Labor Code.

1

6. Mr. Ng-A-Mann worked as a commissioned salesperson for Sears at the Deerbrook Mall store from mid-2000 to June 2013. Mr. Ng-A-Mann was an employee within the meaning of the ADEA and Chapter 21 of the Texas Labor Code.

7. Mr. Ng-A-Mann was born on January 16, 1941. At all times relevant to this lawsuit, he was over the age of 40 and thus covered by the ADEA and Chapter 21 of the Texas Labor Code.

8. Mr. Ng-A-Mann was the oldest commissioned salesperson at the Deerbrook Mall location, but he was also among the most productive. Among other things, he received the "Best in Blue" award.

9. Around 2012, the management at the Deerbrook Mall store began to make comments about Mr. Ng-A-Mann's age. For example, Mr. Ng-A-Mann was asked, "Isn't it time for you to retire?" Mr. Ng-A-Mann noticed that Sears was getting rid of other older employees through severance packages, but Mr. Ng-A-Mann wished to continue working.

10. In late 2012 or early 2013, Sears placed a new manager in charge of Mr. Ng-A-Mann's department. The new manager soon slashed Mr. Ng-A-Mann's hours, forced him to work during non-sales periods (for which he received no compensation), and in general treated Mr. Ng-A-Mann more poorly than the other employees in his department. For example, he would tell Mr. Ng-A-Mann to move heavy crates that Mr. Ng-A-Mann could not lift, even though this sort of work was not within the scope of Mr. Ng-A-Mann's job and was not something for which Mr. Ng-A-Mann was paid. He was required to stay after closing to clean the store, even though this sort of work was not within the scope of his job and even though the non-sales time counted against his sales quota per hour. Notwithstanding this harassment and discrimination, Mr. Ng-A-Mann still managed to attain Best in Blue status.

11. It was a common practice at the Deerbrook Mall store for salespeople to use spare coupons generated during sales to help close transactions for other customers. For example, the cash register might generate a coupon for $25 off on a washing machine, but the customer would leave the coupon behind because he or she did not want it. Salespeople would use these coupons to help close sales for other customers. This was a widespread practice, and in fact commissioned salespeople from different departments would sometimes trade coupons.

12. Management at the Deerbrook store was aware of this practice, and in fact all of Mr. Ng-A-Mann's supervisors and managers were present when he used this sales technique. No one ever told Mr. Ng-A-Mann that this was against company policy or that he should not do it. Mr. Ng-A-Mann did not personally profit from the use of commissions, except to the extent of any commissions that he generated from sales that were induced through the use of coupons.

13. In June 2013, however, Sears used this commonplace policy as a pretext for firing Mr. Ng-A-Mann. A company investigator claimed that he had "caught" Mr. Ng-A-Mann committing "coupon fraud." He told Mr. Ng-A-Mann that he would get off with a warning if he signed a statement admitting wrongdoing. Mr. Ng-A-Mann wrote the statement as dictated by the investigator, hoping to avoid trouble. Instead, Sears used Mr. Ng-A-Mann's "confession" as a ground to fire him, claiming that he was guilty of coupon fraud. Mr. Ng-A-Mann's position was then filled by a younger employee.

14. Mr. Ng-A-Mann filed a timely charge of discrimination on August 21, 2013. The EEOC issued a right to sue letter on December 19, 2013.

15. All conditions precedent have occurred or been satisfied.

16. Sears terminated Mr. Ng-A-Mann on account of his age, in violation of the ADEA and Chapter 21. Sears is therefore liable to Mr. Ng-A-Mann (a) the wages, employment

benefits, and other compensation lost to Mr. Ng-A-Mann; (b) reinstatement or alternatively front pay; (c) pre- and post-judgment interest as provided by law; (c) liquidated damages in an additional amount equal to actual damages; (d) attorneys' fees; and (e) all costs of court.

For the foregoing reasons, Sears should be cited to appear and answer and, upon final hearing, the Court should enter judgment in favor of Mr. Ng-A-Mann and against Sears for:

(1) The wages, employment benefits, and other compensation lost to Mr. Ng-A-Mann;

(2) Reinstatement or alternatively front pay;

(3) Pre- and post-judgment interest as provided by law;

(4) Liquidated damages in an additional amount equal to actual damages;

(5) Attorneys' fees;

(6) All costs of court; and

(7) Any other relief to which Mr. Ng-A-Mann may be entitled.

Respectfully submitted,

/s/ David C. Holmes
David C. Holmes, Attorney in Charge
State Bar No. 09907150
Southern District No. 5494
13201 Northwest Freeway, Suite 800
Houston, Texas 77040
Telephone: 713-586-8862
Fax: 713-586-8863

ATTORNEY FOR PLAINTIFF